**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 19-356** |
| **ANDREW M. BERKOWITZ** | : | |

### GOVERNMENT'S MOTION FOR HEARING
### REGARDING ATTORNEY CONFLICTS OF INTEREST

The United States seeks a hearing with respect to conflicts of interest faced by Richard Q. Hark, Esq., who represents defendant Andrew M. Berkowitz ("Berkowitz").[1] The conflict arises as a result of Mr. Hark's prior representation of Thomas S. Fossile ("Fossile"), who will be charged as a coconspirator in Berkowitz's fraud scheme. Mr. Hark recently represented Fossile in a criminal matter in The Pennsylvania Court of Common Pleas[2] that involves conduct substantially related to the charges against Berkowitz.

Accordingly, the government believes that this Court may find it necessary, upon conducting the required inquiry, to disqualify Mr. Hark in this matter.

### I.    Case Background

On June 25, 2019,[3] Berkowitz was charged by indictment with 19 counts of health care

---

[1]    As a professional courtesy, the government's attorneys provided Mr. Hark with an opportunity before filing this motion to review a draft of the motion and determine for himself whether he believed recusal was warranted. Mr. Hark reviewed the motion and advised that he will object to disqualification.

[2]    Case No. MC-51-CR-0012132-2019. *See* EXHIBIT 1.

[3]    When he was arrested on these charges on June 27, 2019, Berkowitz advised federal agents that he was represented by Mr. Hark. Although Mr. Hark was out of town at the time, he negotiated by phone with government counsel to secure conditions for Berkowitz's release. Mr. Hark officially entered his appearance at Berkowitz's arraignment on July 18, 2019.

fraud, in violation of 18 U.S.C. § 1347, and 23 counts of distribution of controlled substances, in violation of 21 U.S.C. § 841.[4]

As alleged in the indictment, Berkowitz perpetrated a sophisticated, multi-year health care fraud scheme which involved the submission of thousands of fraudulent claims to government health care benefit programs and private insurance providers (collectively "insurers"). In furtherance of the fraud scheme, Berkowitz also secured tacit approval from "pill-seeking" patients to submit excessive claims to their insurers in exchange for medically unnecessary prescriptions for Oxycodone, a dangerous and highly addictive opioid with a high street value.

Berkowitz operated a medical practice under the name A+ Pain Management ("A+") located at 10745 Haldeman Avenue, Philadelphia, PA 19116. At A+, Berkowitz held himself out as a specialist in pain management and addiction treatment medicine. Berkowitz owned Bucks Philadelphia Medical Care Group Ltd. ("BPMCG") and Tri-County Healthcare Institute LLC ("Tri-County"), which he used to submit claims to insurers for services purportedly rendered at A+.

In 2014, Berkowitz began operating BPMCG as a non-pharmacy dispensing site ("NDS"). A physician with a registered NDS is permitted to dispense prescriptions on-site at the physician's office. Insurers would pay for prescription drugs dispensed by a NDS if the medication was necessary to diagnose or treat an illness, injury, condition, disease, or its symptoms, and met accepted standards of medicine.

---

[4]     The government expects to supersede the indictment to charge Berkowitz with conspiracy to commit health care fraud and related crimes.

Berkowitz bought wholesale quantities of inexpensive generic brands of prescription drugs, such as topical analgesics, muscle relaxers, anti-inflammatories, and Schedule IV controlled substances indicated for pain, anxiety, and insomnia, which he stocked at A+. Berkowitz dispensed so-called "goodie bags" of these prescription drugs to virtually every A+ patient whose insurer covered the drugs. Berkowitz billed insurers at a significant mark-up for the drugs he dispensed to A+ patients.

Each "goodie bag" included a combination of prescription drugs, typically (1) topical analgesics, such as Relyyt and/or Lidocaine; (2) muscle relaxers, such as Chlorzoxazone and/or Cyclobenzaprine; (3) anti-inflammatories, such as Celecoxib and/or Nalfon; and/or (5) Schedule IV controlled substances, such as Tramadol for pain, and/or Eszopiclone and Quazepam for insomnia and anxiety. Berkowitz could clear more than $4,000 in profit on each "goodie bag" he dispensed.

From on or about August 1, 2014 through on or about May 30, 2019, the government estimates that Berkowitz, with the assistance of others, defrauded insurers by at least $3.2 million for medically unnecessary "goodie bag" drugs. Berkowitz also obtained payments for services not rendered to A+ patients.

## II.     **Thomas Fossile**

After Berkowitz's arrest, additional evidence was uncovered showing that some A+ employees were involved with Berkowitz in perpetrating the scheme. Fossile, who was responsible for managing the "goodie bag" program for Berkowitz, was quickly identified as a likely coconspirator. Fossile proffered with government counsel on July 30, 2019 and August 21, 2019 at the United States Attorney's Office in Philadelphia.

According to Fossile, Berkowitz submitted fraudulent claims for "goodie bag" drugs, including claims to Fossile's insurer. After Fossile's insurer unknowingly paid the fraudulent claims, he and Berkowitz shared the proceeds. In addition, Berkowitz paid Fossile to recruit other participants in the "goodie bag" scheme. Fossile recruited at least 15 individuals for whom Berkowitz submitted fraudulent claims for "goodie bags." Berkowitz paid Fossile a kickback of approximately 50% of the proceeds paid by insurers for claims submitted for Fossile's recruits. Fossile generated fraudulent "goodie bag" claims for Berkowitz of approximately $1,220,206.

Fossile also stated that "goodie bags" were billed to insurers but never actually dispensed to patients. Fossile stored billed but not dispensed drugs in his car in order to periodically dispose of the drugs offsite. On May 7, 2019, Fossile and his vehicle were searched by police following a traffic stop in Philadelphia. Police recovered 72 bags of heroin; eight of Berkowitz's blank prescription slips; an Oxycodone prescription from Berkowitz for Fossile; and a large box containing bulk prescription drugs, including Schedule IV controlled substances. The drugs in the box were prescribed by Berkowitz to various unknown individuals.[5] Fossile was arrested and charged with Possession with Attempt to Distribute Controlled Substances.[6]

Fossile said he immediately contacted Berkowitz to alert him that the police found the discarded prescription drugs in his car. Fossile was afraid Berkowitz would fire him for being arrested with heroin, so Fossile led Berkowitz to believe that he was arrested for illegally possessing Berkowitz's prescription drugs. According to Fossile, Berkowitz reacted angrily to the news. Berkowitz directed Fossile to an attorney, Mr. Hark, to represent him. According to

---

[5]     *See* Exhibit 2 *Police Arrest Report*.
[6]     The Philadelphia District Attorney withdrew all charges on July 15, 2019 citing lack of prosecution, witness failed to appear.

Fossile, Berkowitz paid Mr. Hark's fees. Although he discussed the complete circumstances of his arrest with Mr. Hark, Fossile was emphatic that Berkowitz be kept in the dark about his heroin use.

On May 15, 2019, Mr. Hark entered his appearance in Fossile's case. He accompanied Fossile to a preliminary hearing on June 13, 2019. Because the Commonwealth was not ready to proceed, the matter was continued to July 15, 2019. On July 2, 2019[7], Mr. Hark told Fossile he would no longer represent him and that Mr. Kramer, whom Fossile had not met, would take over.

### III.  Principles of Law

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *U.S. Const. Amend. VI.* It is well-settled that the Sixth Amendment guarantees encompass the right to be represented by one's counsel of choice. *Powell v. Alabama*, 287 U.S. 45, 53 (1932). The right to counsel of choice gives a defendant control over his defense. *United States v Moscony*, 927 F.2d 742, 748 (3d Cir. 1991). Thus, there is a presumption in favor of defendant's choice of counsel. *United States v. Stewart*, 185 F. 3d 112, 121 (3d Cir. 1999).

However, the defendant's right to counsel of his choice is not absolute. The defendant's counsel can be disqualified by the court if the attorney has an actual conflict or a serious potential for conflict in representing the defendant. *Wheat v. United States*, 486 U.S. 153, 164

---

[7]  On or about June 30, 2019, the government's attorney alerted Mr. Hark to the potential conflict. Mr. Hark denied that he faced a conflict and he continued to represent Fossile and Berkowitz. On July 2, 2019, the government sent Mr. Hark a target letter for Fossile to which Mr. Hark swiftly responded stating he did not represent Fossile on the federal matter. Minutes later Mr. Hark advised that Max Kramer, Fossile's current counsel, would be retained. On July 3, 2019, Mr. Kramer entered his appearance in Fossile's state case.

(1988). "An attorney has an actual, as opposed to a potential, conflict of interest when, during the course of the representation, the attorney's and defendant's interests diverge with respect to a material factual or legal issue or to a course of action." *United States v. Schwarz*, 283 F.3d 76, 91 (2d Cir. 2002). An attorney has a potential conflict of interest if "the interests of the defendant may place the attorney under inconsistent duties at some time in the future." *United States v. Kliti*, 156 F.3d 150, 153 n.3 (2d Cir. 1998). Generally, waiver is appropriate for conflicts that the court considers to be "a lesser [actual] or only a potential conflict." *United States v Perez*, 325 F. 3d 115, 125 (2d Cir. 2003).

When a conflict of interest is identified, the trial court must determine whether a defendant's consent to, and waiver of, the conflict is permissible and appropriate. The Third Circuit has set forth the standard by which a district court must determine whether disqualification of counsel for a defendant in a criminal case is warranted. *Moscony*, 927 F.2d 742 (3d Cir. 1991). To make this determination, the Court must balance three important rights. First, under the Sixth Amendment to the United States Constitution, a criminal defendant is entitled to effective assistance of counsel. *Id.* at 748. Included within this right is the right to representation that is free of conflicts of interest. *Id.* Counsel's undivided loyalty is necessary to ensure that counsel advocates his client's case fully and without reservation. *Id.* Second, a defendant has a presumptive right to counsel of his choice; this right also derives from the Sixth Amendment right to effective assistance of counsel. *Id.* Finally, against the defendant's Sixth Amendment rights, the Court must balance ethical rules of conduct that govern the legal profession and certain concerns that are necessary to preserve the institutional integrity of the courts and the adversarial process. *Id.*

Clearly, to disqualify a defendant's counsel of choice is a serious matter. But unless the decision was entirely arbitrary, a trial court's determination to disqualify counsel is afforded deference. *United States v. Voigt*, 89 F.3d 1050, 1074 (3d Cir. 1996). As long as the Court makes a reasoned determination on the basis of a fully prepared record, its decision will not be deemed arbitrary. *Id.* Where the decision is not arbitrary, that is, it is based on a review of the proper factors, the decision of the district court is subject to review only for abuse of discretion. *Id.*

## IV.  <u>Conflicts Faced by Attorney Richard Q. Hark</u>

The full extent of the seemingly intertwined relationships between Mr. Hark, Berkowitz, and Fossile is unclear, but the information above suffices to illustrate the ethical tangle presented here. In summary, Mr. Hark previously represented Fossile, who is Berkowitz's coconspirator and soon to be codefendant, in a substantially related matter. During his representation, Mr. Hark learned confidential information about Fossile's drug use and information about his role in the prescription drug scheme. Indeed established precedent demonstrates that such conflicts may warrant judicial correction.

Many cases confirm the propriety of disqualification where the conflicts are similar to this case. In *Wheat*, the Supreme Court held that the trial court did not abuse its discretion in refusing to permit defendant Wheat to be represented by an attorney who represented a co-defendant at an <u>earlier</u> trial, and another co-defendant who pled guilty, even though all three defendants purported to waive any conflict. With respect to the latter defendant, Bravo, who may have been called as a government witness at the later trial of defendant Wheat, the Court stated that the attorney, "because of his prior representation of Bravo, would have been unable ethically to provide that cross-examination." *Id.* at 164. The Third Circuit has emphasized the duty of the

attorney not to represent the defendant if the representation was adverse to either the defendant or the witnesses. Citing *Wheat*, the Court declared:    "Conflicts of interest arise whenever an attorney's loyalties are divided . . . and an attorney who cross-examines former clients inherently encounters divided loyalties." *Moscony*, 927 F.2d at 750.

While presently Mr. Hark appears to face a potential conflict, an actual conflict would emerge should Berkowitz proceed to trial. Mr. Hark's loyalties would clearly be divided between Berkowitz and Fossile. He would be required to cross-examine a former client using privileged information obtained during his representation, or refrain from aggressive cross-examination because of his duty to that client. Vigorous cross-examination is the bedrock of our adversarial system. Fossile is entitled to have Mr. Hark's loyalty, and Berkowitz is entitled to have an attorney who would vigorously cross-examine Fossile.

There is also the potential for the jury to learn that Mr. Hark is personally familiar with Fossile and previously represented him. If it became known that Berkowitz paid Mr. Hark to represent Fossile, because Berkowitz's own interests were at stake as a result of Fossile's arrest, the jury might see counsel, and thus Berkowitz, as duplicitous putting them both in a negative light. If this were to occur, Berkowitz would be deprived of the shield that conflict-free counsel would provide.

It is axiomatic that an attorney owes a continuing duty of loyalty to a former client, not to prejudice the client or reveal its confidences. A lawyer's duty to protect his client's confidences even survives the client's death. *Swidler & Berlin*, 524 U.S. 399, 410-11 (1998).

The Court in *Voigt* recognized the need for disqualification where an attorney's loyalties are divided. *Voigt* at 1078-79. There, defendant Voigt was charged with engineering an advance

fee fraud, under the auspices of the bogus "Euro-American Money Fund Trust." The district court disqualified an attorney who had represented both the Trust and a co-defendant of Voigt in responding to grand jury subpoenas. The Third Circuit concluded: "Since there was a strong possibility that [co-defendant] Anderskow might face cross-examination by a former attorney, there was a serious potential for a conflict of interest which, notwithstanding Voigt's attempt to downplay it on appeal, warranted disqualification." *Id.* at 1078.

In yet another decision, the Court held that the district court properly rejected waivers and disqualified attorneys in a criminal case who had previously represented various parties to a related civil action who became government witnesses in the criminal prosecution; the Court held that the attorneys' participation as part of a team of attorneys required to cross-examine their former clients created a scenario of inherently divided professional loyalties. *Stewart*, 185 F.3d at 121. *See also United States v. Moses*, 58 Fed. Appx. 549, 553-55 (3d Cir. 2003) (not precedential) (district court did not abuse its discretion in disqualifying attorney who would be in position of cross-examining former client).

The decision in *United States v. Provenzano*, 620 F.2d 985 (3d Cir. 1980), is also significant. There, the district court disqualified an attorney who, in an earlier murder case, had represented a person who would be a witness at trial. "Eisenberg would be in a conflict of interest situation between the duty of vigorous representation of Thomas Andretta and the duty of loyalty to Picardo, since confidences relating to Picardo's murder conviction and events of that period would be useful to impeach him as a witness against Thomas Andretta." *Id.* at 1004. Notably, the Third Circuit held that an attorney's access to privileged information of a former client is "conclusively presumed," as the court may not inquire into such matters. *Id.* at 1005.

The Pennsylvania Rules of Professional Conduct which apply in this Court, while not dispositive, are consistent.    Rule 1.7 provides:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
>
>> (1) the representation of one client will be directly adverse to another client; or
>> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.
>
> (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
>
>> (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
>> (2) the representation is not prohibited by law;
>> (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
>> (4) each affected client gives informed consent.

Rule 1.9(a) adds:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent.

Thus, according to Rule 1.9(a), Berkowitz and Fossile would have to waive their right to conflict-free counsel to allow Mr. Hark to remain in the case. However, a waiver of that kind appears presumptively inconsistent with individual self-interest. A conflict cannot be waived "if, in the circumstances of the case, the conflict is of such a serious nature that no rational defendant would knowingly and intelligently desire that attorney's representation." *Schwarz,* 283 F.3d at 95.

Even if the parties were willing to waive the conflict, this would not end the inquiry. Despite the ability of affected clients to waive a concurrent conflict of interest, the Supreme Court has stated that a trial court "[has] an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Wheat,* 486 U.S. at 160. Because of this independent interest, district courts "must be allowed substantial latitude in refusing waivers of conflicts of interest" in both instances where actual or potential conflicts exist. *Id.*at 163. In this regard, the Third Circuit stated,

> Usually, the various rights and duties of the attorney clash when a defendant
> seeks to waive his right to conflict-free representation in circumstances in
> which the counsel of his choice may have divided loyalties due to
> concurrent or prior representation of . . . a co-conspirator[] or a government
> witness. Such a waiver, however, does not necessarily resolve the matter, for
> the trial court has an institutional interest in protecting the truth-seeking
> function of the proceedings over which it is presiding by considering
> whether the defendant has effective assistance of counsel, regardless of any
> proffered waiver. Moreover, to protect the critically important candor that
> must exist between client and attorney, and to engender respect for the court
> in general, the trial court may enforce the ethical rules governing the legal
> profession with respect both to client-attorney communications and
> to conflict-free representation, again regardless of any purported waiver.
> Finally, the court has an independent interest in protecting a fairly-rendered
> verdict from trial tactics that may be designed to generate issues on appeal.

*Moscony,* 927 F.2d at 749.

As noted earlier, Mr. Hark's loyalties would be deeply divided. Thus, the improprieties of the conflicts in this case are a basic matter of fiduciary duty and the principle of the ethical rule that attorneys must avoid even the appearance of impropriety.

**V.**     <u>**Conclusion**</u>

For all of the reasons stated above, the government respectfully requests that the Court hold a hearing to address the conflicts of interest in the representation of Berkowitz and, if the facts set forth in this memorandum are found, disqualify Mr. Hark in this matter.

Respectfully submitted,

WILLIAM M. MCSWAIN
United States Attorney


/s M. Beth Leahy
M. Beth Leahy
Anthony D. Scicchitano
Assistant United States Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that this pleading was electronically filed, and was thus served on this date upon defense counsel below:

Richard Q. Hark

/s M. Beth Leahy
M. Beth Leahy
Assistant United States Attorney

Dated: September 4, 2019

EXHIBIT 1

# MUNICIPAL COURT OF PHILADELPHIA COUNTY

### DOCKET

**Docket Number: MC-51-CR-0012132-2019**

## CRIMINAL DOCKET

**Court Case**



Commonwealth of Pennsylvania

v.

Thomas S. Fossile

Page 1 of 4

## CASE INFORMATION

| | |
|---|---|
| Judge Assigned: | Date Filed: 05/08/2019    Initiation Date: 05/07/2019 |
| OTN: U 164537-2    LOTN: | Originating Docket No: 1924040534-0012132 |
| Initial Issuing Authority: | Final Issuing Authority: |
| Arresting Agency: PSP - Philadelphia | Arresting Officer: Affiant |
| Complaint/Incident #: 1924040534-0012132 | |

| Case Local Number Type(s) | Case Local Number(s) |
|---|---|
| Originating Docket Number | MC-51-CR-0012132-2019 |
| District Control Number | 1924040534 |
| Originating Document Number | 1924040534-0012132 |

## STATUS INFORMATION

| Case Status: | Closed | Status Date | Processing Status | Arrest Date: | 05/07/2019 |
|---|---|---|---|---|---|
| | | 07/15/2019 | Completed | | |
| | | 05/08/2019 | Awaiting Preliminary Hearing | | |
| | | 05/08/2019 | Awaiting Status Hearing | | |

## CALENDAR EVENTS

| Case Calendar Event Type | Schedule Start Date | Start Time | Room | Judge Name | Schedule Status |
|---|---|---|---|---|---|
| Preliminary Arraignment | 05/08/2019 | 1:18 am | B08 | | Scheduled |
| Preliminary Hearing | 05/22/2019 | 8:00 am | 703 | Judge David C. Shuter | Continued |
| Preliminary Hearing | 06/13/2019 | 8:00 am | 603 | Judge Joffie C. Pittman III | Continued |
| Preliminary Hearing | 07/15/2019 | 8:00 am | 603 | Judge Christine M. Hope | Scheduled |

## DEFENDANT INFORMATION

| | |
|---|---|
| Date Of Birth: | 05/18/1994    City/State/Zip: Huntingdon Valley, PA 19006 |

Alias Name
FOSSILE, THOMAS

## CASE PARTICIPANTS

| Participant Type | Name |
|---|---|
| Defendant | Fossile, Thomas S. |

## BAIL INFORMATION

**Fossile, Thomas S.**    Nebbia Status: None

| Bail Action | Date | Bail Type | Percentage | Amount | | |
|---|---|---|---|---|---|---|
| | | | | | Bail Posting Status | Posting Date |
| Set | 05/08/2019 | Monetary | 10.00% | $10,000.00 | | |
| | | | | | Posted | 05/08/2019 |

CPCMS 9082    Printed: 07/15/2019

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets . Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

EXHIBIT 1

# MUNICIPAL COURT OF PHILADELPHIA COUNTY

## DOCKET



**Docket Number: MC-51-CR-0012132-2019**

# CRIMINAL DOCKET

Court Case

Commonwealth of Pennsylvania

v.

Thomas S. Fossile

Page 2 of 4

## CHARGES

| Seq. | Orig Seq. | Grade | Statute | Statute Description | Offense Dt. | OTN |
|------|-----------|-------|---------|---------------------|-------------|-----|
| 1 | 1 | F | 35 § 780-113 §§ A30 | Manufacture, Delivery, or Possession With Intent to Manufacture or Deliver | 05/07/2019 | U 164537-2 |
| 2 | 2 | M | 35 § 780-113 §§ A16 | Int Poss Contr Subst By Per Not Reg | 05/07/2019 | U 164537-2 |
| 3 | 3 | M | 35 § 780-113 §§ A32 | Use/Poss Of Drug Paraph | 05/07/2019 | U 164537-2 |

## DISPOSITION SENTENCING/PENALTIES

Disposition

| Case Event | Disposition Date | Final Disposition | |
|------------|------------------|-------------------|---|
| Sequence/Description | Offense Disposition | Grade | Section |
| Sentencing Judge | Sentence Date | Credit For Time Served | |
| Sentence/Diversion Program Type | Incarceration/Diversionary Period | Start Date | |
| Sentence Conditions | | | |

**Proceed to Court**

| Preliminary Arraignment | 05/08/2019 | Not Final | |
|---|---|---|---|
| 1 / Manufacture, Delivery, or Possession With Intent to Manufacture or Deliver | Proceed to Court | F | 35 § 780-113 §§ A30 |
| 2 / Int Poss Contr Subst By Per Not Reg | Proceed to Court | M | 35 § 780-113 §§ A16 |
| 3 / Use/Poss Of Drug Paraph | Proceed to Court | M | 35 § 780-113 §§ A32 |

**Dismissed - LOP**      Defendant Was Present

| Preliminary Hearing | 07/15/2019 | Final Disposition | |
|---|---|---|---|
| 1 / Manufacture, Delivery, or Possession With Intent to Manufacture or Deliver | Dismissed - LOP | F | 35 § 780-113 §§ A30 |
| 2 / Int Poss Contr Subst By Per Not Reg | Dismissed - LOP | M | 35 § 780-113 §§ A16 |
| 3 / Use/Poss Of Drug Paraph | Dismissed - LOP | M | 35 § 780-113 §§ A32 |

## COMMONWEALTH INFORMATION

**Name:**     Philadelphia County District Attorney's Office

Prosecutor

**Supreme Court No:**

**Phone Number(s):**

215-686-8000     (Phone)

**Address:**

3 South Penn Square

Philadelphia, PA  19107

## ATTORNEY INFORMATION

**Name:**     Max Gerson Kramer

Private

**Supreme Court No:**     071246

**Rep. Status:**     Active

**Phone Number(s):**

215-880-8892     (Phone)

215-880-8892     (Office)

**Address:**

123 S Broad St Fl 25

Philadelphia, PA  19109-1023

Representing: Fossile, Thomas S.

## ENTRIES

| Sequence Number | CP Filed Date | Document Date | Filed By |
|-----------------|---------------|---------------|----------|

CPCMS 9082

Printed: 07/15/2019

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets . Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

EXHIBIT 1

# MUNICIPAL COURT OF PHILADELPHIA COUNTY

## DOCKET



Docket Number: MC-51-CR-0012132-2019
## CRIMINAL DOCKET
Court Case

Commonwealth of Pennsylvania
v.
Thomas S. Fossile

Page 3 of 4

## ENTRIES

| Sequence Number | CP Filed Date | Document Date | Filed By |
|---|---|---|---|
| 1 | 05/08/2019 | | Municipal Court - Philadelphia County |

PARS Transfer

| 2 | 05/08/2019 | | Stack, Patrick |

Bail Set - Fossile, Thomas S.

| 5 | 05/08/2019 | | Fossile, Thomas S. |

Bail Posted - Fossile, Thomas S.

| 1 | 05/15/2019 | | Hark, Richard Quinton |

Entry of Appearance
 Entry of Appearance filed on behalf of Fossile, Thomas S..

| 4 | 05/22/2019 | | Shuter, David C. |

Defense Request For Continuance Attorney Unavailable

Commonwealth Ready On Call
Defendant Present In Courtroom/Service Received For Next Listing

Next Court Date: 06/13/2019 Courtroom 603

Judge: David C. Shuter
ADA: G. Mazmanian; ATTY: R. Hark; Steno: J. Doyle; Court Clerk: K. McBride

| 4 | 06/13/2019 | | Pittman, Joffie C. III |

Commonwealth Request For Continuance Discovery Incomplete

Commonwealth not ready, seizure outstanding
Defense counsel, Richard Hark
Must be tried both
Defendant present
Earliest Possible Date: 7/1/19, cw request
Next Court Date: 7/15/19, Room 603
Judge: Joffie C. Pittman, III ADA: Dorian/Lee Atty: Hark Steno: Catanzariti Clerk: Morrison

| 1 | 07/03/2019 | | Kramer, Max Gerson |

Entry of Appearance

| 1 | 07/15/2019 | | Hope, Christine M. |

Dismissed - LOP

Commonwealth not ready, Police Officer failed to appear - no reason given. Defense ready, defendant present.
Case dismissed, lack of prosecution.
Judge: Hon. Christine Hope ADA: Justin Holmes Deff. Atty: Max Kramer Steno: Janine Doyle Clerk: Angel Soda

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets . Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

EXHIBIT 1

# MUNICIPAL COURT OF PHILADELPHIA COUNTY

## DOCKET



Docket Number: MC-51-CR-0012132-2019

# CRIMINAL DOCKET

Court Case

Commonwealth of Pennsylvania
v.
Thomas S. Fossile

Page 4 of 4

## ENTRIES

| Sequence Number | CP Filed Date | Document Date | Filed By |
|---|---|---|---|
| | | | |

## CASE FINANCIAL INFORMATION

Last Payment Date: 05/08/2019     Total of Last Payment: -$10.00

**Fossile, Thomas S.**
Defendant

| | Assessment | Payments | Adjustments | Non Monetary Payments | Total |
|---|---|---|---|---|---|
| **Costs/Fees** | | | | | |
| Bail Bond (Philadelphia) | $10.00 | ($10.00) | $0.00 | $0.00 | $0.00 |
| Costs/Fees Totals: | $10.00 | ($10.00) | $0.00 | $0.00 | $0.00 |
| Grand Totals: | $10.00 | ($10.00) | $0.00 | $0.00 | $0.00 |

** - Indicates assessment is subrogated

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets . Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

# EXHIBIT 2

## Philadelphia Police Department Arrest Report

| Defendant: last name: **FOSSILE** | | Sex: **Male** | SSN: | DOB: |
|---|---|---|---|---|
| first name: **THOMAS S** | middle **S** Race: **White** | | | Birth Place: **Philadelphia** |

| Address | HUNTINGDON ' PA 19006- | Phone :**215-370-8357** |
|---|---|---|

| Year: **2019** | District: **24** | DC#: **19-24-040534** | PSA: **3** | Ctrl#: **00000** |
|---|---|---|---|---|
| PID: **1210237** | SID: **40200363** | OTN: **U1645372** | Event: **152567028** | CBN: **1581630** |
| Crime Class: **3134** | Desc: **Investigation by State Police/Arrest** | | Authority:**State Police** | |
| DFJ: **N** | | | FBI / FID:**13K9MM9TC** | |

### ARREST INFORMATION:
Date / Time: 05/07/2019 12:51PM    District: 24    Inside/Outside: O    Arrest Type: **SA**

3300 ARAMINGO AVE / E. WESTMORELAND ST  Philadelphia PA 19125-

Slating Date: 05/07/2019    Slating Time: 01:21PM    Sum/Warr:    Issued By AC Magistrate:

### OCCURRENCE:
Date / Time: 05/07/2019 12:51PM    Date reported: 05/07/2019 12:51PM    Inside/Outside: O    Codefendants?: N

3300  ARAMINGO AV  / E WESTMORELAND ST  Philadelphia PA 19125-

### NARCOTICS INFORMATION:
| Type Code: Heroin | Weight AMT: 21 | Weight: Grams | Street Value($): $350.00 |
|---|---|---|---|
| ODV Test: N/A | ODV Test Result: N/A | | Tested By: s13121 |

### REQUESTED HEARING DATE:    REQUESTED HEARING LOCATION:
06/05/2019 00:00

### CHARGES:

| Code | OC | Description | Grade | Counts |
|---|---|---|---|---|
| CS13A30 | | CSA-MANUF/DEL/PWI | F | 001 |
| CS13A16 | | CSA-K/I POSSESSION | M | 001 |
| CS13A32 | | CSA-POSS-PARAPHERNAL | M | 001 |

### VEHICLE INFORMATION:
Year / Color / Make / Model of Vehicle:    2012 / WHITE / INFINITI / G25

Vehicle State and Tag:  PA    KBA8278    VIN:    Insurance:  Y

### COMPLAINANTS AND WITNESSES:
**Complainant(s)**

GIOVANNA DISALVATORE    Age: 99    Phone(H):    Phone(W): 215-000-0000 SSN:  - -

Philadelphia PA 19131-

Email Address:

**Witness(es)**

Trooper DISALVATORE, GIOVAN    Age: 99    Phone(H): 215-000-0000 Phone(W):  - -    SSN:  13-12-1

- - PA State Police -  Phila PA 00000-

Email Address:

| ARREST REPORT BY: | Badge | Dist/Unit Description | UNIT | Platoon Squad Group Id |
|---|---|---|---|---|
| s13121   DISALVATORE GIOVANNI | | PA State Police | 8000 | |

### ARREST REPORT APPROVED BY:
Supervisor- payroll no:    Approval Code:

### POLICE PERSONNEL:

| Employee Name | Payroll Number | Badge | UNIT | Platoon/Group | Vacation Dates | Vacation Description | Needed At Hearing Police/Sup | Arrest OFC. |
|---|---|---|---|---|---|---|---|---|
| DISALVATORE GIOVANNI | s13121 | | 8000 | | | | Y / R | Y |

### ADDITIONAL INFORMATION:
Hits: Y    Statement?:    Lab User Fees Requested?: Y    ADA Concerns?:

### EMPLOYER INFORMATION:
Occupation: OPERATIONS MANAGER    Employer: A+ PAIN MANAGEMENT    Phone: 215-000-0000

Philadelphia PA  -

**EXHIBIT 2**

*Page 2 of 2* PARS

## *Philadelphia Police Department Arrest Report*

Defendant: last name: **FOSSILE**       Sex: **Male**    SSN:         DOB:

first name: **THOMAS S**       middle initial: **S**    Race: **White**         Birth Place: **Philadelphia**

**DESCRIPTIVE DATA:**

| | | | |
|---|---|---|---|
| Complexion | CLEAR | Eye Characteristics | NORMAL |
| Eye Color | BRO | Facial Hair | STUBBLE |
| Glasses (Y=Yes) | 0 | Hair Color | BLK |
| Hair Length | ABOVE EARS | Hair Style | STRAIGHT |
| Teeth | NORMAL | | |

# EXHIBIT 2

Page 1 of 3 *PARS*

## Philadelphia Police Department Arrest Report

| Defendant: last name: **FOSSILE** | | | | Sex: **Male** | SSN: | | DOB: ( |
|---|---|---|---|---|---|---|---|
| first name: **THOMAS S** | | | middle initial: **S** | Race: **White** | | | Birth Place: **Philadelphia** |

| Address: | | HUNTINGDON VA PA 19006- | | | |
|---|---|---|---|---|---|
| Home Phone #: | | Cell Phone#: - - | | Cell Phone Carrier: | |
| Email Address: | | | | Social Media Address: | |

| Year: **2019** | District: **24** | DC#: **19-24-040534** | PSA: **3** | Ctrl#: **00000** |
|---|---|---|---|---|
| PID: **1210237** | SID: **40200363** | OTN: **U1645372** | Event: **152567028** | CBN: **1581630** |
| Crime Class: **3134** | Desc: **Investigation by State Police/Arrest** | | Authority: **State Police** | |
| DFJ: **N** | | | FBI / FID: **13K9MM9TC** | |

**Arrest Name:** THOMAS FOSSILE          DOB: 00/00/0000          SSN:

### ARREST INFORMATION:

Date / Time: 05/07/2019 12:51PM       District: 24   Inside/Outside: O     Arrest Type: **SA**        VIDEO: Y

3300 ARAMINGO AVE / E. WESTMORELAND ST Philadelphia PA 19125-

Slating Date: 05/07/2019    Slating Time: 01:21PM        Sum/Warr:                          Issued By AC Magistrate:

### OCCURRENCE:

Date / Time: 05/07/2019 12:51PM          Date reported: 05/07/2019 12:51PM        Inside/Outside: O      Codefendants?: N

3300 ARAMINGO AV / E WESTMORELAND ST  Philadelphia PA 19125-

*Gun Involved:* **N**      *Gun Discharged:* **N**        *Shooting Victim:* **N**           **BWC Video: N**

### NARCOTICS INFORMATION:

| Type Code: Heroin | Weight AMT: 21 | Weight: Grams | Street Value($): $350.00 |
|---|---|---|---|
| ODV Test: N/A | ODV Test Result: N/A | | Tested By: s13121 |

# EXHIBIT 2

## *Philadelphia Police Department Arrest Report*

| Defendant: last name **FOSSILE** | Sex: **Male** | SSN: | DOB: |
|---|---|---|---|
| first name **THOMAS S** middle initial **S** | Race: **White** | | Birth Place: **Philadelphia** |

### FACTS OF THE CASE:

☐ON 05/07/19 AT APPROXIMATELY 0835 HOURS, I WAS TRAVELING EASTBOUND ON ALLEGHENY AVENUE BETWEEN FRANKFORD AVENUE AND ARAMINGO AVENUE. I WAS ATTIRED IN FULL UNIFORM, AND I WAS OPERATING MARKED PATROL UNIT K1-32. I OBSERVED A WHITE INFINITI G25 BEARING PA REGISTRATION KBA8278 ALSO TRAVELING EASTBOUND. I OBSERVED THAT THE FRONT WINDSHIELD WAS CRACKED HORIZONTALLY ACROSS ITS ENTIRE LENGTH. I QUERIED THE DISPLAYED REGISTRATION THROUGH THE BMV, AS WELL AS CLEAN/NCIC. THE REGISTERED OWNER OF THE VEHICLE RETURNED AS HAVING AS A SUSPENDED DRIVER'S LICENSE. A PHOTO OF THE REGISTERED OWNER WAS ALSO DISPLAYED AS A RESULT OF MY QUERY. I IMMEDIATELY RECOGNIZED THE DRIVER OF THE VEHICLE AS THE REGISTERED OWNER. THE VEHICLE MADE A LEFT FROM ALLEGHENY AVENUE ONTO ARAMINGO AVENUE.

☐I ACTIVATED THE LIGHTS OF MY PATROL VEHICLE AND INITIATED A TRAFFIC STOP ON ARAMINGO AVENUE AT ITS INTERSECTION WITH WESTMORELAND STREET. I APPROACHED THE VEHICLE ON ITS DRIVER SIDE AND MADE CONTACT WITH THE OPERATOR AND LONE OCCUPANT OF THE VEHICLE, A WHITE, NON-HISPANIC MALE. I ASKED FOR HIS LICENSE. THE OPERATOR PRODUCED A COPY OF HIS PENNSYLVANIA DRIVER'S LICENSE AS WELL AS A PENNSYLVANIA IDENTIFICATION CARD. I IDENTIFIED HIM AS THOMAS STEPHEN FOSSILE, DOB: PA OLN : I ASKED FOSSILE WHERE HE WAS COMING FROM PRIOR TO THE TRAFFIC STOP. HE RELATED THAT HE WAS ON HIS WAY TO WORK AND WAS IN THE AREA AFTER STOPPING AT A DUNKIN' DONUTS. I ASKED FOSSILE WHY HE DID NOT HAVE ANY DUNKIN' DONUTS PRODUCTS WITH HIM TO WHICH HE RESPONDED HE HAD ALREADY FINISHED IT. I ASKED IF THERE WERE ANY DRUGS OR WEAPONS IN THE CAR. FOSSILE PAUSED ON DRUGS BEFORE RESPONDING "NO" TO MY QUESTIONS. HE APPEARED TO BE NERVOUS IN THAT HIS EYES WERE DARTING BACK AND FORTH AND HIS HANDS WERE SHAKING.

☐FOSSILE RELATED TO ME THAT THE REGISTRATION WAS IN THE BACK SEAT AND MOTIONED TOWARDS A CLEAR TRASH BAG THAT WAS IN THE SEAT BEHIND HIM. I OBSERVED THAT THERE WAS INDEED A REGISTRATION CARD IN THE BAG. I ALSO OBSERVED VARIOUS LOOSE MEDICATION BOTTLES WITH STICKERED PRESCRIPTION LABELS AFFIXED TO THEM.

☐FOSSILE EXITED THE VEHICLE AT MY DIRECTION AND PRODUCED HIS REGISTRATION CARD WHICH WAS EXPIRED. HE CONTINUED SEARCHING THROUGH THE BAG AND THEN FURTHER RELATED THAT HE THOUGHT HIS CURRENT REGISTRATION MIGHT ACTUALLY BE IN THE GLOVEBOX. I FOLLOWED HIM TO THE PASSENGER SIDE OF THE VEHICLE AS HE CIRCLED IT FROM THE REAR. AS HE OPENED THE GLOVEBOX, I OBSERVED A SILVER MARIJUANA GRINDER IN THE GLOVEBOX. THERE WAS ALSO A TORN, EMPTY CLEAR GLASSINE BAGGIE ON THE FLOORBOARD OF THE DRIVER'S SIDE. I KNOW THROUGH MY TRAINING AND EXPERIENCE THAT THESE CLEAR GLASSINE BAGGIES ARE COMMONLY USED TO PACKAGE BLUE GLASSINE BAGGIES WHICH CONTAIN HEROIN/FENTANYL. I INSTRUCTED FOSSILE TO SIT IN THE DRIVER'S SEAT. I RETURNED TO MY PATROL VEHICLE AND REQUESTED A SECONDARY UNIT RESPOND TO MY LOCATION SO I COULD MORE SAFELY CONDUCT A PROBABLE CAUSE SEARCH OF THE VEHICLE.

☐TROOPER SAIMIR SHEHU RESPONDED TO MY LOCATION. HE WAS OPERATING UNMARKED PATROL UNIT K1-50 WHICH IS A GOLD FORD TAURUS. I INSTRUCTED FOSSILE TO EXIT HIS VEHICLE AND SIT ON THE BUMPER OF MY PATROL VEHICLE. TROOPER SHEHU PROVIDED BACK-UP WHILE I BEGAN MY SEARCH OF THE VEHICLE.

☐I LOCATED IN THE CENTER CONSOLE FOUR (4) BUNDLES OF HEROIN, CLEAR GLASSINE BAGGIES CONTAINING BLUE WAX PAPER STAMPED "BAD BUNNY." THERE WERE 53 BAGS IN ALL STAMPED "BAD BUNNY." EACH BUNDLE OF HEROIN CONTAINED ONE PACKET THAT WAS UNSTAMPED, BRINGING THE TOTAL NUMBER OF BAGS TO 57. THERE WERE ALSO VARIOUS EMPTY BAGGIES, BOTH BLUE WAX PAPERS AND EMPTY CLEAR GLASSINE BAGGIES. THERE WAS ALSO A MINIATURE STRAW.

☐BEHIND THE DRIVER'S SEAT WAS CLEAR PLASTIC TRASH BAG. 15 MORE BAGS OF HEROIN WERE LOCATED IN THE TRASH BAG WITH VARIOUS STAMPS. THERE A LARGE BOX CONTAINING BULK PRESCRIPTION MEDICATION, MOST OF WHICH WERE NOT PRESCRIBED TO FOSSILE. SOME OF THE MEDICATION WAS IMMEDIATELY RECOGNIZABLE AS A CONTROLLED SUBSTANCE. THERE WERE ALSO EIGHT (8) BLANK DOCTOR PRESCRIPTION SCRIPTS FROM ANDREW BERKOWITZ, MD, ONE OF WHICH WAS SIGNED IN BLANK. OF THE PRESCRIPTION BOTTLES THAT WERE LOCATED, THE FOLLOWED HER DETERMINED TO BE CONTROLLED SUBSTANCES:

- ☐1 UNOPENED WHITE PRESCRIPTION BOX MARKED ASZOPICLONE 30 1 MG TB
- ☐1 UNOPENED WHITE PILL BOTTLE MARKED ANAP/CAFF/DIHYDROCODINE 90 CAPSULES
- ☐5 UNOPENED WHITE BOTTLE MARKED TRAMADOL HCL 30 150 MG CAPSULES
- ☐1 UNOPENED WHITE BOX MARKED TEMAZEPAM 30 22.5 MG CAPSULES
- ☐10 UNOPENED WHITE PILL BOTTLE MARKED TEMAZEPAM 30 22.5 MG CAPSULES
- ☐1 UNOPENED WHITE PILL BOTTLE MARKED CELECOXIB 60 200 MG CAPSULES
- ☐2 UNOPENED WHITE PILL BOTTLE MARKED THERAMINE 62.5 100MG CAPSULES
- ☐1 PRESCRIPTION FROM ANDREW BERKOWITZ M.D. FOR THOMAS FOSSILE FOR OXYCODONE 5 MG

☐FOSSILE WAS PLACED UNDER ARREST, AND I READ HIM HIS MIRANDA WARNINGS. FOSSILE INDICATED THAT HE UNDERSTOOD THE WARNINGS AS THEY WERE READ.

☐I REQUESTED THAT THE PHILADELPHIA PARKING AUTHORITY RESPOND TO MY LOCATION. THE VEHICLE WAS TOWED TO PSP PHILADELPHIA WHERE THE BULK MEDICATION COULD BE PROPERLY SEIZED AND INVENTORIED.

☐THE SEIZED HEROIN, BULK PRESCRIPTION MEDICATION, BLANK SCRIPTS, AND VARIOUS OTHER SEIZED CONTROLLED SUBSTANCES WERE ENTERED INTO EVIDENCE IN TROOP K PHILADELPHIA UNDER PROPERTY RECORD K01-14790. THE HEROIN AND SUSPECTED SCHEDULED NARCOTICS WERE SENT TO BETHLEHEM REGIONAL LABORATORY FOR DRUG IDENTIFICATION.

☐FOSSILE WAS TRANSPORTED TO THE PHILADELPHIA DETENTION UNIT FOR FINGERPRINTING AND PROCESSING.

☐BASED UPON MY TRAINING AND EXPERIENCE I BELIEVE THAT FOSSILE POSSESSED THE VARIOUS PRESCRIPTION PILLS WITH THE INTENT TO DISTRIBUTE THEM.

☐AN MVR REQUEST WAS SUBMITTED TO PRESERVE THE AUDIO AND VIDEO CAPTURED BY THE PATROL VEHICLE'S DIGITAL RECORDING EQUIPMENT.

☐REFER TO PA STATE POLICE INCIDENT # PA2019-580222.

**EXHIBIT 2**

*Page 3 of 3 PARS*

## Philadelphia Police Department Arrest Report

| Defendant: last name: **FOSSILE** | | Sex: **Male** | SSN: | DOB: |
|---|---|---|---|---|
| first name: **THOMAS S** | middle initial: **S** Race: **White** | | | Birth Place: **Philadelphia** |

**SUMMARY VIOLATIONS**
VC1543(A) – DRIVING WHILE OPERATING PRIVILEGE IS SUSPENDED OR REVOKED
VC4524(A) – OBSTRUCTION ON FRONT WINDSHIELD

**CHARGES:**

| Code | OC | Description | Grade | Counts |
|---|---|---|---|---|
| CS13A30 | | CSA-MANUF/DEL/PWI | F | 001 |
| CS13A16 | | CSA-K/I POSSESSION | M | 001 |
| CS13A32 | | CSA-POSS-PARAPHERNAL | M | 001 |

**REQUESTED HEARING DATE:**            **REQUESTED HEARING LOCATION:**

06/05/2019 00:00

**VEHICLE INFORMATION:**

Year / Color / Make / Model of Vehicle:    2012 / WHITE / INFINITI / G25

Vehicle State and Tag:  PA    KBA8278    VIN: .                Insurance: Y

Name and Address of Vehicle's Owner:    THOMAS FOSSILE
                                                                                PA 19006-

**COMPLAINANTS AND WITNESSES:**

*Complainant(s)*

GIOVANNA DISALVATORE          Age: 99   Phone(H):          Phone(W): 215-000-0000 SSN:  - -
                                            Philadelphia PA 19131-

Email Address:

*Witness(es)*

Trooper DISALVATORE, GIOVAN          Age: 99   Phone(H): 215-000-0000 Phone(W):  - -          SSN: 13-12-1
- - PA State Police  -  Phila PA 00000-

Email Address:

| **ARREST REPORT BY:** | **Badge** | **Dist/Unit Description** | | **UNIT** | **Platoon** | **Squad** | **Group Id** |
|---|---|---|---|---|---|---|---|
| s13121   DISALVATORE GIOVANNI | | PA State Police | | 8000 | | | |

**ARREST REPORT APPROVED BY:**

Supervisor- payroll no:                                Approval Code:

**POLICE PERSONNEL:**

| Employee Name | Payroll Number | Badge | UNIT | Platoon/Group | Vacation Dates | Vacation Description | Needed At Hearing Police/Sup | Arrest OFC. |
|---|---|---|---|---|---|---|---|---|
| DISALVATORE GIOVANNI | s13121 | | 8000 | | | | Y  /  R | Y |

**ADDITIONAL INFORMATION:**

Hits: Y          Statement?:          Lab User Fees Requested?: Y          ADA Concerns?:

**EMPLOYER INFORMATION:**

Occupation: OPERATIONS MANAGER          Employer: A+ PAIN MANAGEMENT          Phone: 215-000-0000
                    Philadelphia PA   -

**DESCRIPTIVE DATA:**

| Complexion | CLEAR | Eye Characteristics NORMAL | |
|---|---|---|---|
| Eye Color | BRO | Facial Hair | STUBBLE |
| Glasses (Y=Yes) | 0 | Hair Color | BLK |
| Hair Length | ABOVE EARS | Hair Style | STRAIGHT |
| Teeth | NORMAL | | |